```
                                              SEND
                                              ENTER
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANDREW CHUNG NGUYEN, | ) | No. SACV 05-0823-RC |
| | ) | |
| Plaintiff, | ) | |
| | ) | OPINION AND ORDER |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Andrew Chung Nguyen filed a complaint on August 24, 2005, seeking review of the Commissioner's decision denying his application for disability benefits. The Commissioner answered the complaint on January 17, 2006, and the parties filed a joint stipulation on March 13, 2006.

//
//

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Commissioner of the Social Security Administration, is substituted as the defendant.

//

## BACKGROUND

### I

On April 8, 2002, plaintiff applied for disability benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423, claiming an inability to work since January 1, 2000, due to neck and low back injuries. Certified Administrative Record ("A.R.") 51-53, 61. The plaintiff's application was denied initially on August 26, 2002, and was denied again on January 6, 2003, following reconsideration. A.R. 28-37. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Ellen M. Koldewey ("the ALJ") on August 5, 2003. A.R. 38-39, 401-31. On September 20, 2004, the ALJ issued a decision finding plaintiff is not disabled. A.R. 16-25. The plaintiff appealed this decision to the Appeals Council, which denied review on July 8, 2005. A.R. 4-10.

### II

The plaintiff, who was born in Vietnam on June 24, 1946, is currently 60 years old. A.R. 51. Plaintiff has a GED, attended two years of college, has had training as an electronics technician, and has previously worked as a computer technician. A.R. 62, 67, 74-77, 90-91, 356, 361, 410-12, 415.

The plaintiff has received medical treatment for his back since at least 1982, when Minh Dang, M.D., diagnosed him with lower back pain. A.R. 246-341. On February 1, 2001, John C. Brown, M.D., examined plaintiff and recommended spinal surgery. A.R. 209-10, 344-45. On April 16, 2001, plaintiff was admitted to Hoag Memorial

Hospital, where Dr. Brown performed surgery on plaintiff consisting of an anterior cervical discectomy and fusion at C5-C6 and C6-C7 utilizing internal fixation with a plate and screws.  A.R. 187-89.  Plaintiff was discharged from the hospital on April 19, 2001.  A.R. 181, 189.  In May and June 2001, Dr. Brown noted plaintiff was "really doing very well" postoperatively with no complaints about his neck or arms.  A.R. 178, 180.  On August 22, 2001, Dr. Brown found plaintiff remained temporarily totally disabled for the next two months because allografts[2] were used and they take much longer to incorporate.  A.R. 176.  On October 16, 2001, Dr. Brown reported plaintiff was still doing quite well, but with some intermittent dysethesias[3] into his arms depending on plaintiff's position in bed at night.  A.R. 175.  On March 7, 2002, Dr. Brown again reported that plaintiff's "neck is really doing quite well."  A.R. 174.

However, on September 10, 2002, plaintiff was admitted to the Fountain Valley Regional Hospital and Medical Center, where Dr. Brown diagnosed him with spondylolisthesis[4] at L3-L4, mild degenerative disease at L4-L5 with sacralization of L5 on S1 causing symptoms of

---

[2] An allograft is "a graft of tissue between individuals of the same species but of disparate genotype[.]"  Dorland's Illustrated Medical Dictionary, at 51 (29th ed. 2000).

[3] Dysesthesia is the "distortion of any sense, especially of that of touch."  Dorland's Illustrated Medical Dictionary at 553.

[4] Spondylolisthesis is "forward displacement (olisthy) of one vertebra over another, usually of the fifth lumbar over the body of the sacrum, or of the fourth lumbar over the fifth, usually due to a developmental defect of the pars interarticularis."  Dorland's Illustrated Medical Dictionary at 1684.

instability. A.R. 146-48. Lumbar spine x-rays revealed bilateral pars intra-articularis defects characteristic of an isthmic spondylolisthesis and some retrolisthesis of L4 on L5 with L5 fused to S1, and a lumbar spine MRI taken January 15, 2001, showed posterior disc bulging at L3-L4 and L4-L5. A.R. 146-48. On September 10, 2002, Dr. Brown performed a reduction and fusion of an unstable spondylolisthesis at L3-L4 and L4-L5. A.R. 150, 153-55. Postoperative lumbar spine x-rays showed evidence of posterior fusion and discectomy at the L3-L4 and L4-L5 levels with interpedicular screws and rods noted from L3 through L5. A.R. 161. Plaintiff was discharged from the hospital on September 15, 2002. A.R. 150. On October 8, 2002, Dr. Brown stated plaintiff was "doing beautifully." A.R. 173.

On July 29, 2002, Thomas R. Dorsey, M.D., examined plaintiff, diagnosed him with mild left L3 radiculopathy, and opined plaintiff can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently, occasionally stoop and crouch, and stand and walk for 6 hours in an 8-hour day. A.R. 103-06.

On October 31, 2003, Ted R. Greenzang, M.D.,[5] a psychiatrist,

---

[5] Although Dr. Greenzang's examination was conducted almost a year before the ALJ rendered her opinion, it was not provided to the ALJ, but was presented to the Appeals Council after the ALJ rejected plaintiff's claim for disability benefits. Nevertheless, since "the Appeals Council affirmed the decision of the ALJ denying benefits to [the plaintiff, the additional] evidence is part of the record on review to this court." Gomez v. Chater, 74 F.3d 967, 971 (9th Cir.), cert. denied, 519 U.S. 881 (1996); Bustamante v. Massanari, 262 F.3d 949, 952 (9th Cir. 2001).

4

conducted a qualified medical examination of plaintiff, including psychological testing, and diagnosed plaintiff with an unspecified anxiety disorder, with psychological factors affecting his medical condition, and obsessive compulsive and passive aggressive personality traits. A.R. 364-93. Dr. Greenzang concluded:

> From a psychiatric standpoint, [plaintiff] continues to manifest prominent symptoms of anxiety and associated dysphoric symptoms. He experiences physiological manifestations of stress and he is at an emotional handicap secondary to his physical symptoms. He feels tired and weak. He worries all the time. He is easily distracted. He is forgetful. He experiences increased self-doubt. He feels irritable. He lacks frustration tolerance. In my opinion his symptoms of anxiety, dysphoric symptoms, physiological manifestations of stress, and the emotional handicap precipitated by physical symptoms referable to his neck, back, and hands preclude him from a psychiatric standpoint from returning to his usual and customary employment. . . .

A.R. 390.

Dr. Greenzang noted plaintiff took the Minnesota Multiphasic Personality Inventory II, but his "profiles are likely to be invalid" because "[h]e endorsed items in an inconsistently true manner" and "[i]t is possible he misunderstood the directions or failed to cooperate fully with the test administration." A.R. 393. Dr.

Greenzang opined plaintiff is "slightly" to "slightly-to-moderately" impaired in his ability to comprehend and follow instructions and maintain attention and concentration for necessary periods or to do work requiring set limits, tolerances or standards; he is "slightly" impaired in his ability to perform simple and repetitive tasks; and he is "slightly-to-moderately" impaired in his ability to maintain a work pace appropriate to a given work load, to perform complex and varied tasks, to relate to other people beyond giving and receiving instructions, to influence people, to make generalizations, evaluations or decisions without immediate supervision, and to accept and carry out responsibility for direction, control, and planning.[6] A.R. 386-88.

On December 22, 2003, medical expert Alanson Mason, M.D., an

---

[6] Dr. Greenzang evaluated plaintiff under California's workers' compensation system. At the time of Dr. Greenzang's report, the California workers' compensation system evaluated mental impairments using the psychiatric protocol, which listed eight psychiatric factors: (1) the ability to comprehend and follow instructions; (2) the ability to perform simple and repetitive tasks; (3) the ability to maintain a work pace appropriate to a given work load; (4) the ability to perform complex and varied tasks; (5) the ability to relate to other people beyond giving and receiving instructions; (6) the ability to influence people; (7) the ability to make generalizations, evaluations, or decisions without immediate supervision; and (8) the ability to accept and carry out responsibility for direction, control, and planning. Department of Industrial Relations, Division of Workers' Compensation, Schedule for Rating Permanent Disabilities, Table for Rating Psychiatric Disabilities, 2-3 (April 1997). A permanent disability rating for an injured worker with a psychiatric disability was obtained by rating each of the eight psychiatric factors from "minimal" to "severe." Id.

orthopedic surgeon, diagnosed plaintiff with cervical spondylosis,[7] status post-anterior cervical fusion with instrumentation C5-C6-C7, lumbar spondylolisthesis at L3-L4, status post-lumbar laminectomy[8] and fusion with pedicle screw fixation L4-L5 and L5-S1, and bilateral carpal tunnel syndrome, and opined plaintiff's condition does not meet or equal a listed impairment.  A.R. 346-50.  Dr. Mason opined he would like to see recent x-rays of plaintiff's cervical and lumbar spine and a current physical examination.  A.R. 349.  Dr. Mason further opined plaintiff can occasionally lift and/or carry up to 20 pounds, bend, squat, crawl, climb, and **reach**, frequently lift and/or carry up to 10 pounds, and continuously lift and/or carry up to 5 pounds, can sit for 3 hours at a time and 6 hours in an 8-hour workday, can stand and/or walk for 2 hours at a time and 4 hours in an 8-hour workday, and plaintiff's driving time should be limited due to fatigue.  A.R. 350.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision.  <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006); <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d 1050,

---

[7] Spondylosis is "a general term for degenerative changes due to osteoarthritis."  <u>Dorland's Illustrated Medical Dictionary</u> at 1684.

[8] Laminectomy is the "excision of the posterior arch of a vertebra."  <u>Id.</u> at 960.

7

1052 (9th Cir. 2006).

The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. § 404.1520. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities. 20 C.F.R. § 404.1520(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. 20 C.F.R. § 404.1520(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists

in significant numbers in the national economy.  20 C.F.R. § 404.1520(g).

//

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.  (Step One).  The ALJ then found plaintiff's "cervical spondylosis, status post[-]anterior cervical fusion with instrumentation C5, C6 and C7, lumbar spondylolisthesis L3/L4, status post[-]lumbar laminectomy and fusion with pedicle screw fixation L4/L5 L5/S1, and bilateral cubital syndrome are considered 'severe'" impairments (Step Two); however, he does not have an impairment or combination of impairments that meets or equals a Listing.  (Step Three).  The ALJ next determined plaintiff is unable to perform his past relevant work.  (Step Four).  Finally, the ALJ concluded plaintiff can perform a significant number of jobs in the national economy; therefore, he is not disabled.  (Step Five).

**IV**

A claimant's residual functional capacity ("RFC") is what he can still do despite his physical, mental, nonexertional, and other limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here, the ALJ found plaintiff has the RFC "to perform a significant range of light work."[9]  A.R. 25.  Specifically, the ALJ found plaintiff can

---

[9] Under Social Security regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it

"lift and carry 20 pounds occasionally and 10 pounds frequently, sit, stand or walk for six hours out of an eight hour day, and occasionally climb, balance, stoop, kneel, crouch and crawl." A.R. 22. The plaintiff, however, contends the ALJ's RFC finding is not supported by substantial evidence because the ALJ failed to properly consider the opinions of the medical expert, Dr. Mason. The plaintiff is correct.

Dr. Mason opined plaintiff can occasionally lift and/or carry up to 20 pounds, bend, squat, crawl, climb, and reach, frequently lift and/or carry up to 10 pounds, and continuously lift and/or carry up to 5 pounds, can sit for 3 hours at a time and 6 hours in an 8-hour workday, and can stand and/or walk for 2 hours at a time and 4 hours in an 8-hour workday; however, plaintiff's driving time should be limited due to fatigue. A.R. 350. "The Commissioner may reject the opinion of a nonexamining physician by reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998). However, while "not bound by findings made by State agency or other program physicians and psychologists, [the ALJ] may not ignore these opinions and must explain the weight given to the opinions in their decisions." S.S.R. 96-6p, 1996 WL 374180, *2 (S.S.A.);[10] Babcock v. Barnhart, 412 F. Supp. 2d 274, 283 (W.D. N.Y.

---

involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

[10] Social Security Rulings constitute the Social Security Administration's interpretations of the statute it administers and of its own regulations. Ukolov v. Barnhart, 420 F.3d 1002, 1005 n.2 (9th Cir. 2005); Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996). Social Security

2006); Lechner v. Barnhart, 321 F. Supp. 2d 1015, 1034 (E.D. Wis. 2004). Here, although the ALJ noted that Dr. Mason "reviewed the evidence and responded to interrogatories[,]" A.R. 21, the ALJ committed legal error when, without discussing Dr. Mason's opinions, the ALJ implicitly rejected Dr. Mason's opinion in determining plaintiff can stand or walk for six hours in an eight-hour day and in failing to limit plaintiff to occasional reaching. S.S.R. 96-6p, 1996 WL 374180 at *2; see also Babcock, 412 F. Supp. 2d at 283 ("A bare citation of the review psychologist's report . . . is not enough" when the ALJ failed to discuss the psychologist's conclusions, which did not support the ALJ's findings.); Alejandro v. Barnhart, 291 F. Supp. 2d 497, 514-15 (S.D. Tex. 2003) (ALJ erred in failing to discuss nonexamining psychologist's findings); Batista v. Chater, 972 F. Supp. 2d 211, 219-20 (S.D. N.Y. 1997)(ALJ erred in not discussing medical expert's opinion).

Nevertheless, "[a] decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Here, the vocational expert testified that given the ALJ's assessment of plaintiff's RFC, plaintiff could perform other work in the national economy, and provided two examples: electronics tester, Dictionary of Occupational Titles ("DOT")[11] no. 726.684-026,

---

Rulings do not have the force of law. Chavez, 103 F.3d at 851; Quang Van Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989). Nevertheless, once published, they are binding upon ALJs and the Commissioner. Holohan v. Massanari, 246 F.3d 1195, 1202-03 n.1 (9th Cir. 2001); Gatliff v. Comm'r of the Soc. Sec. Admin., 172 F.3d 690, 692 n.2 (9th Cir. 1999).

[11] The DOT is the Commissioner's primary source of reliable vocational information. Johnson v. Shalala, 60 F.3d 1428, 1434

1  and electronics technician, DOT no. 003.161-014.  Yet, both of these
2  positions require the ability to reach **frequently**.  U.S. Dep't of
3  Labor, Selected Characteristics of Occupations Defined in the Revised
4  Dictionary of Occupational Titles, 47, 209 (1993).  Thus, if Dr.
5  Mason's opinion that the plaintiff is limited to occasionally reaching
6  is accepted, plaintiff cannot perform either of these jobs.  See Id.
7  at Appendix C, C-3 (1993) (defining "occasionally" as "[a]ctivity or
8  condition exists up to 1/3 of the time" and "frequently" as
9  "[a]ctivity or condition exists from 1/3 to 2/3 of the time").  For
10 this reason, the ALJ's error was not harmless.  Stout, 454 F.3d at
11 1055.

V

14    When the Commissioner has committed legal error, the Court has
15 the authority to affirm, modify, or reverse the Commissioner's
16 decision "with or without remanding the cause for rehearing."  42
17 U.S.C. § 405(g); McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir.
18 2002).  "Remand for further administrative proceedings is appropriate
19 if enhancement of the record would be useful[,]" Benecke v. Barnhart,
20 379 F.3d 587, 593 (9th Cir. 2004), as it would be here.  Harman v.
21 Apfel, 211 F.3d 1172, 1181 (9th Cir.), cert. denied, 531 U.S. 1038
22 (2000); Light v. Social Security Admin., 119 F.3d 789, 793 (9th Cir.
23 1997); see also Babcock, 412 F. Supp. 2d at 284 (remanding so ALJ
24 could "explain what weight, if any, he gives to the various medical
25 //
26 //

---

28 n.6 (9th Cir. 1995); Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).

1  //
2  //
3  //
4  //
5  opinions in the record. . . , and, if the ALJ rejects any of those
6  opinions in whole or in part, his reasons for doing so").[12]

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is granted; and (2) the Commissioner's decision is reversed, and the action is remanded to the Social Security Administration for further proceedings consistent with this Opinion and Order, pursuant to sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered accordingly.

DATE:   March 28, 2007              /s/ Rosalyn M. Chapman
                                    ROSALYN M. CHAPMAN
                                    UNITED STATES MAGISTRATE JUDGE

---

[12] Having reached this conclusion, it is unnecessary to reach the other issues plaintiff raises, none of which would provide him further relief than herein granted. Specifically, on remand, plaintiff will have the opportunity to further develop the record, if necessary, and the ALJ will have the opportunity to consider plaintiff's mental condition and the MRI plaintiff maintains was not incorporated into the record. See A.R. 428; Joint Stip. at 4:15-18, Exh. 1.

R&R-MDO\05-0823.MDO
3/28/07

13